ERWIN BALDUAN, Respondent, *v.* FRANK CONTEY, Appellant.

First Department, April 22, 1927.

Process — service — motion to set aside service of summons and inquest and to vacate default judgment — defendant was resident of New Jersey — evidence shows that defendant was never served.

It was error for the court to deny defendant's motion to vacate and set aside the service of the summons in this action and the inquest, and to vacate a default judgment rendered against the defendant, on the ground that the summons was never served on the defendant who was a resident of New Jersey, for the testimony of the defendant, his secretary and his two children was positive to the effect that on the day of the alleged service the defendant was not in the city of New York, which testimony was supported by collateral facts, whereas the testimony by the detectives of the agency which had charge of the service was not only contradictory but was also contrary to established facts.

O'MALLEY, J., dissents.

APPEAL by the defendant, Frank Contey, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 7th day of January, 1927, denying defendant's motion to vacate and set aside the service of the summons herein and the inquest and judgment taken against defendant, upon the ground that defendant was never served with the summons in the action.

*Louis W. Stotesbury* of counsel, for the appellant.

*I. Maurice Wormser* of counsel [*Herman Hoffman* with him on the brief], for the respondent.

MARTIN, J. The Special Term made an order denying defendant's motion to vacate a judgment entered against him by default.

His contention is that he was not served with the summons or with any other papers in this action.

The defendant is a resident of Jersey City, N. J., where he has a place of business on Whiton street. Some time after July 26, 1926, he received a letter from plaintiff's attorney in which it was stated that according to his records defendant was served with a summons on June 24, 1926, and offering him an opportunity to appear. Instead of answering the letter defendant sent it to the Commercial Casualty Insurance Company with which company he carried insurance to the extent of $50,000. According to plaintiff's attorney the insurance company has been familiar with the action from its inception.

On August 16, 1926, the defendant received another letter from plaintiff's attorney, inclosing a copy of a judgment entered against defendant on August 10, 1926, for $30,062.50. This letter was taken to the insurance company by the defendant's son.

An action was thereafter commenced upon the judgment in the New Jersey Supreme Court, in which action the defendant interposed an answer setting forth that he had not been served with the summons which resulted in the judgment against him.

The motion resulting in the order now before the court was then made. The defendant averred: " I was never served with any papers nor process of any sort or description at any time in the above entitled case."

It was suggested by both the attorney for the plaintiff and the attorney specially appearing for the defendant that, if the court were unable to pass upon the fact of service upon the affidavits, the process server and the defendant be produced for oral examination. Thereafter, the court referred the question to a referee to take testimony and report. The determination of the motion was held in abeyance. The referee submitted his report and opinion upholding the service and recommended that the motion be denied.

The service of the summons is alleged to have been made by one James J. Tarello, a professional process server, employed by the Diamond Detective Agency, the proprietor being an individual doing business under that name. It is asserted that Tarello was accompanied at the time of the alleged service by Joseph Goldsmith, described by Tarello as one of the " operators " working for the Diamond Detective Agency. Goldsmith in his testimony described himself as " superintendent."

The proof of service depends upon the testimony of these two men, which must under the circumstances be scrutinized with great care.

The defendant was sojourning at Bradley Beach, N. J., during the summer of 1926. He went to his place of business in Jersey

City every ten days or two weeks. He swore positively that he was not in New York city at any time between April, 1926, and the date of his examination, which was December 11, 1926. The defendant's testimony was corroborated by his daughter Angela, by his secretary and by his son.

The referee appears to have been surprised at the exactness with which the defendant's witnesses agreed in their testimony. It is much more difficult to understand why the referee could find nothing significant about the numerous fatal variances in the testimony of the two detectives or process servers, or any probative force in the documentary evidence, or in the telephone calls made, for the purpose of inducing the defendant to go to New York on the date of the alleged service.

The facts were simple and the defendant's witnesses were testifying about events of the same day. It was not remarkable, therefore, that their testimony should agree. The events of the day and the date were impressed upon these witnesses because on that day there were telephone calls pretending to come from the insurance company and others for the purpose of inducing the defendant to go to New York, which upon investigation were found not to be authentic. The telephone slips fixed the date and the time of the messages. It was also the birthday of one connected with the defendant's family. By such means the defendant and his witnesses were able to fix with certainty the events and the movements of the defendant on the day of the alleged service.

It appears that counsel for the plaintiff had serious misgivings as to the service of the summons, for he caused the detectives to go back and check it up. The witness Goldsmith, when asked if the attorney was satisfied, said: " He was not, if he made us go again." This witness later on said he wanted to change his testimony, finally saying: " It was not a question of doubt, but it was to make doubly certain that we knew what we were talking about when we said we served Contey."

The serious doubt as to the service raised by the testimony of the defendant and his three witnesses was confirmed by the contradictory evidence of the two detectives, the telephone calls to Jersey City that day, and other circumstances set forth in detail in the evidence.

The story of Tarello is that he followed the defendant from his place of business in Jersey City to the entrance of the Hudson Tubes in New Jersey, came with him on the Hudson Tube train to the New York side, and served the summons as Contey left the building No. 50 Church street, borough of Manhattan, city of New York.

On cross-examination the detectives became involved in many contradictions. They say they both went to Jersey City and followed the defendant until he was finally served in New York. For their work they were to receive certain compensation. When the witness Goldsmith was being interrogated with reference to the charges in the case he said: " Q. Did you have any understanding as to what your charge would be in this case? A. Surely. Q. What was the understanding? A. Per diem. Q. How much a day? A. The usual rate. Q. What was the usual rate? A. Ten dollars a day; five dollars for half a day. Q. You had that understanding with Mr. Hoffman? A. Yes, sir. Q. You were the one that had the understanding? A. The office had the understanding through me. Q. You personally made that arrangement with Mr. Hoffman, did you? A. Yes, sir. Q. When? A. We have had that arrangement ever since we have been doing business with each other. Q. So you had no special arrangement in this case? A. No. Q. Did you render a bill in this case? A. The office rendered a bill."

This witness having volunteered the statement that he had seen the bill on Mr. Hoffman's desk, it was called for and produced. It flatly contradicted the witness. It showed a charge for but one man's time on the day defendant is said to have been served.

It is unlikely that two men were engaged in the work that day if the time of but one was charged.

The detective Goldsmith also testified that the rate was ten dollars a day and that there was no special arrangement, whereas the rate appears to be five dollars a day and there evidently was a special arrangement that a bonus of ten dollars would be given to the man who effectuated service of the process.

Numerous other discrepancies in the testimony of these two detectives appear. It would be unjust to permit a judgment to stand on any such alleged proof of service, contradicted by the positive evidence of the defendant and three witnesses, as well as by the circumstances surrounding the case.

The order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

DOWLING, P. J., FINCH and McAVOY, JJ., concur; O'MALLEY, J., dissents and votes for affirmance upon the ground that upon the evidence there was presented purely a question of fact as to service and that such finding should not be disturbed.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.